## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| ANGEL N. JONES, | ) | CASE NO. 1:16CV01151 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **REPORT AND** |
| Defendant. | ) | **RECOMMENDATION** |

Plaintiff, Angel N. Jones ("Plaintiff"), filed this *pro se* challenge the final decision of

Defendant, Nancy A. Berryhill,[1] Acting Commissioner of Social Security ("Commissioner"),

denying her applications for Supplemental Security Income ("SSI") under Titles II and XVI of

the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act").  This Court has

jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States

Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for preparation of a

Report and Recommendation.  For the reasons set forth below, it is recommended that the

Commissioner's final decision be VACATED and this matter be REMANDED for further

proceedings.

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social
Security.

1

# I.   PROCEDURAL HISTORY

In January 2014, Plaintiff filed an application for SSI alleging a disability onset date of January 1, 1993.[2] (Transcript ("Tr.") 156-59).  She later amended the alleged onset date to January 13, 2014, the date she filed her application.  (Tr. 34).  The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ").  (Tr. 111-19).

In December 2015, an ALJ held a hearing, during which Plaintiff, represented by counsel, and an impartial vocational expert ("VE"), testified.  (Tr. 33-52).  On January 29, 2016, the ALJ issued a written decision finding Plaintiff was not disabled.  (Tr. 13-25).  The ALJ's decision became final on April 21, 2016, when the Appeals Council declined further review. (Tr. 1-4).

---

[2]     Plaintiff has filed four applications for SSI. (Tr. 13).  She filed her first application in July 1997, and on January 7, 1998, she was awarded disability benefits.  (*Id.*).  Plaintiff was incarcerated in May of 1998 and became ineligible for benefits on July 1, 1999, because she had been incarcerated for a continuous period of twelve full calendar months.  (*Id.*).  Plaintiff did not appeal the termination.  (*Id.*).  Plaintiff filed her second application in July 2000.  (*Id.*).  She was awarded benefits on November 28, 2000.  (*Id.*).  Plaintiff was incarcerated in September of 2009 and her benefits were terminated on November 1, 2010, after she had been incarcerated for a continuous period of twelve full calendar months. (*Id.*).  Plaintiff did not appeal the termination.  (*Id.*).  On June 8, 2011, Plaintiff filed her third application for benefits. (*Id.*).  The application was denied at the initial and reconsideration stages of the administrative process.  (*Id.*).  An administrative hearing was held in February 2013, and an unfavorable decision was issued on March 8, 2013.  (*Id.* citing Tr. 56-66).  The Appeals Council denied review.  (*Id.* citing Tr. 71-73).  Plaintiff filed the current application on January 13, 2014.  (Tr. 156-61).

On May 16, 2016, Plaintiff filed her *pro se* complaint to challenge the Commissioner's final decision.  (Doc. No. 1).  The parties have completed briefing in this case.[3]  (Doc. Nos. 15, 18, 19).  Plaintiff asserts the following assignments of error:

> (1)  Whether the ALJ erred by failing to afford controlling weight to the opinion of Plaintiff's treating psychiatrist
>
> (2)  Whether the ALJ erred by concluding that Plaintiff's impairments did not meet Listing 12.04.

(Doc. No. 15-1 at 1).

## II.   EVIDENCE

### A.   Personal and Vocational Evidence

Plaintiff was born May 12, 1976 and was 37 years-old at the time of her administrative hearing, making her a "younger" person under social security regulations.  (Tr. 23).  Plaintiff has a high school education and is able to communicate in English.  (*Id.*)  She has no past relevant work. (*Id.*).

### B.   Medical Evidence

Plaintiff has a history of treatment for mental health problems.  In October 2011, psychiatrist Megan Testa, M.D., diagnosed Plaintiff with a bipolar disorder and a mood disorder. (Tr. 649).  Plaintiff reported feeling depressed and having no appetite, low energy and interest, and poor concentration.  Dr. Testa indicated that "voices were bothering her and they were mood

---

[3]     Plaintiff did not raise any specific challenges to the ALJ's decision in her brief on the merits. (Doc. No. 15 at 1-7). However, she attached a post-hearing brief that was written by her previous attorney and submitted to the Appeals Council. (Doc. No. 15-1; Tr. 2, 4, 222-25).  Since Plaintiff is proceeding *pro se* and because the Commissioner's brief on the merits tracks the arguments raised in the post-hearing brief, the Court will address and reference those arguments as if they are being raised by Plaintiff.

congruent, tell[ing] her depressive things but [they] don't command suicide or self-harm."  (Tr. 649).  Her dose of medication was increased.  (Tr. 650).

In May 2013, a social worker assessed Plaintiff with a psychotic disorder.  (Tr. 368).  She noted family discord, disruption in the family system, unemployment, housing problems, homelessness, problems with access to healthcare services, economic and financial problems, and other psychosocial and environmental problems.  (*Id.*).  She was referred to a mental health clinic.  (*Id.*).

On February 28, 2014, Plaintiff presented to psychiatrist Nnennaya Nwokeji, M.D., complaining of anxiety episodes that caused tightness in her chest and left her unable to breathe.  (Tr. 541).  She said the symptoms occurred two or three times a week.  (Tr. 541).  Her attacks were reportedly triggered by feeling lost or being in crowded or tight spaces.  (*Id.*).  Plaintiff was depressed, and she reported hearing whispery voices and seeing shadows.  (*Id.*).  Plaintiff reported feeling that people were out to get her, but she did not know who they were.  (*Id.*).  Plaintiff explained that she wore sunglasses all the time, so she cannot see them.  (*Id.*).  Her doctor adjusted her medications.  (Tr. 542).

Plaintiff presented to Dr. Nwokeji in April 2014.  (Tr. 488-90).  Plaintiff reported that she had been staying at a shelter, until she started living with a friend, but she was unsure how long her friend would allow her to stay.  (Tr. 488).  Her mood was sad and agitated, and she did not want to do anything but sleep.  (Tr. 488).  She rated her mood a two on a scale of ten, with ten being happiest.  (*Id.*).  She denied suicidal and homicidal ideations, but reported hearing her deceased grandparent's voice talking to her.  (Tr. 488-89).  She also felt the police and her friends were out to get her.  (Tr. 488-89).  On examination, Plaintiff' behavior was cooperative;

4

she was oriented to time, person, and place; her speech was spontaneous; thought process was logical and organized; she had paranoid thought content, but no evidence of delusions; her mood and affect were sad; attention was sustained; memory was within normal limits; and judgment and insight were fair.  (Tr. 489).  Her medications were adjusted.  (*Id.*).

In June 2014, Plaintiff had a psychiatric evaluation with Nurse Ellen Alaimo.  (Tr. 676). Plaintiff reported depressed mood, anxiety, and hearing voices.  (*Id.*).  Ms. Alaimo noted that during her prior intake visit, malingering was suspected.  (*Id.*).  Plaintiff was prescribed medication, assessed a Global Assessment of Functioning (GAF) score of 40 to 45.[4]  (Tr. 679). Ms. Alaimo noted the need to rule out exaggerated symptoms or drug use.  (Tr. 679).

From May 2014 through November 2014, Plaintiff participated in therapy sessions for homeless women.  (Tr. 700-44).  On November 17, 2014, Plaintiff told her therapist that she felt better than she had in a long time and was doing well on medication.  (Tr. 700).

At the end of 2014 and through much of 2015, Plaintiff received treatment from her psychiatrist Dr. Testa on numerous occasions.[5]  (Tr. 746-65).  Plaintiff reported depression and

---

[4]     The GAF scale reports a clinician's assessment of an individual's overall level of functioning.  An individual's GAF is rated between 0-100, with lower numbers indicating more severe mental impairments.  A GAF score between 41 and 50 indicates serious symptoms or any serious impairment in social, occupational or school functioning.  A score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  A recent update of the DSM eliminated the GAF scale because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice."  See Diagnostic and Statistical Manual of Mental Disorders (DSM-5) at 16 (American Psychiatric Ass'n, 5th ed., 2013).

[5]     Plaintiff was seen by Dr. Testa on the following dates: October 20, 2014; November 17, 2014; January 12, 2015; April 13, 2015; May 11, 2015; June 8, 2015; July 6, 2015; July 13, 2015; July 27, 2015; August 31, 2015; August 17, 2015; September 21, 2015.

stress.  (Tr. 1154-55, 1184; Tr. 1179).  Plaintiff also complained of hearing voices at times.  (Tr. 746, 749-50, 1163, 1176, 1180, 1185).  On other occasions, Plaintiff reported she was "fine" (Tr. 1158), "okay" (Tr. 1162) or "better" (Tr. 1171).  Plaintiff was homeless and living in a shelter. (Tr. 1156).  Dr. Testa diagnosed major depressive disorder with psychotic features.  Plaintiff continued on medication and scheduled follow up appointments.  (Tr. 1156, 1159, 1163, 1172, 1180, 1185).

**C.     Medical Opinions**

On February 26, 2014, Karen Steiger, Ph.D., reviewed Plaintiff's mental health records on behalf of the state agency.  (Tr. 79-83).  Dr. Steiger concluded that Plaintiff had mild restrictions in activities of daily living; moderate difficulties with social functioning and maintaining concentration, persistence or pace; and no episodes of decompensation.  (Tr. 81). Dr. Steiger adopted the RFC of the prior ALJ under AR 98-4, the Drummond Ruling.  (Tr. 83). She opined that Plaintiff could perform simple, routine, repetitive tasks in a routine and predictable environment (i.e., only occasional changes in either the work to be performed or the work setting) that require no more than occasional (i.e., one-third of the workday) and superficial (i.e., limited to serving, speaking and receiving instructions) interactions with coworkers or the public.  (Tr. 83).

On March 21, 2014, Dr. Nwokeji completed a mental capacity assessment of Plaintiff. (Tr. 454-56).  Dr. Nwokeji opined that Plaintiff had moderate to marked limitations as to understanding and memory; moderate to marked limitations with respect to sustained concentration and persistence; slight to marked limitations with respect to social interaction; and moderate to extreme limitations with respect to adaptation.  (*Id.*).

6

Kristen Haskins, Ph.D, reviewed Plaintiff's mental health records in May 2014.  (Tr. 93). Dr. Haskins opined that Plaintiff could complete simple tasks in a setting that did not require close sustained focus, concentration or fast pace.  (Tr. 95-96).  Dr. Haskins explained that Plaintiff could not have more than superficial interaction with others because she tends to be suspicious of others.  (Tr. 95-96).  Dr. Haskins also noted that Plaintiff had limited coping skills and that she could perform tasks that were static and in a setting that did not have stringent time or production requirements.  (Tr. 96).  Dr. Haskins did not adopt the RFC of the prior ALJ because there was no formal diagnosis of psychosis.  (Tr. 96).

Dr. Testa issued a number of opinions regarding Plaintiff's condition. On May 11, 2015, Dr. Testa stated that the claimant worked hard through twelve-step groups and that her desire to use alcohol decreased.  (Tr. 769).  She stated that Plaintiff was sober and monitored on probation.  (Tr. 769).  Dr. Testa stated that Plaintiff's depression persisted despite sobriety and medication compliance.  (Tr. 768).  Dr. Testa found marked limitations in the following areas: the ability to work in coordination with or in proximity to others without being distracted by them; the ability to complete a normal workday without interruptions from psychologically-based symptoms; the ability to accept instructions and respond appropriately to criticism from supervisors; and the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  (Tr. 767-69).  Dr. Testa found extreme limitations in the following areas: the ability to complete a normal workweek without interruptions from psychologically based symptoms and the ability to perform at a consistent pace with a standard number and length of rest periods.  (Tr. 767-69).  Dr. Testa opined that Plaintiff would be absent four or more times in an average month (Tr. 768).

On June 8, 2015, Dr. Testa opined that Plaintiff did not have the emotional stability nor the focus, persistence and pace to allow her to work reliably and successfully.  (Tr. 1100).  She recommended that Plaintiff not pursue work and that she focus on mental health treatment.  (Tr. 1100).

On October 26, 2015, Dr. Testa opined that Plaintiff had marked limitations in the ability to remember locations and work-like procedures, ability to understand and remember detailed instructions; the ability to work in coordination with or in proximity to others without being distracted by them; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and the ability to set realistic goals or make plans independently of others.  (Tr. 1188-90).  Dr. Testa also opined that Plaintiff would probably be absent three times in an average month.  (Tr. 1189).  Dr. Testa found extreme limitations in the ability to maintain attention and concentration for extended periods; the ability to complete a normal workweek without interruptions from psychologically-based symptoms; the ability to perform at a consistent pace with a standard number and length of rest periods; the ability to interact appropriately with the general public; the ability to accept instructions and respond appropriately to criticism from supervisors; and the ability to respond appropriately to changes in the work setting.  (Tr. 1188-90).  Dr. Testa found that Plaintiff had moderate to slight limitations in several other areas.  (Tr. 1188-90).  Dr. Testa concluded that Plaintiff's substance abuse had no impact on her assessment.  (Tr. 1190).

**D.**     **Hearing Testimony**

During the hearing, Plaintiff, represented by counsel, testified to the following:

- Plaintiff testified that she stopped using drugs at least a year and half before the hearing.  (Tr. 41).

- Plaintiff testified that she had a number of impairments including anxiety attacks when she was in a crowd of people, depression and various physical impairments.  (Tr. 35).

- Plaintiff also said that she sometimes heard voices.  (Tr. 35). She later testified her symptoms improved when she was taking her medication but she still heard voices.  (Tr. 37).

- At the time of the hearing, Plaintiff was pregnant.  (Tr. 35).  She said her symptoms were not related to her pregnancy but that it exacerbated her problems because she had to take insulin for diabetes.  (Tr. 35-36).

- Plaintiff was also receiving treatment for physical impairments.  (Tr. 36). She took medication but she had not attended physical therapy because she was waiting until she gave birth.  (Tr. 37).

Mark Anderson (hereinafter "the VE") testified as impartial expert at the administrative hearing.  (Tr. 45-49).  The VE testified Plaintiff had no past relevant work.  (Tr. 45).  The ALJ then posed the following hypothetical question:

> [T]he first [hypothetical] person has no exertional limitations, no postural limitations, no manipulative limitations, no visual limitations, no communications deficits, and no environmental limitations.  However, this person can do no complex tasks, but can do simpler, routine tasks.  The tasks should be low stress, which I define as no high production quotas, no piece rate work, no work involving arbitration, confrontation, negotiation, supervision.  The work should have only occasional changes, either in the work setting, or the work to be performed.  This person should have only superficial interpersonal interactions with the public, and coworkers.  By that I mean only -- let's see -- how should I put this -- no intense or intimate contact, either in serving, speaking, receiving instructions; and the contact would be less than five minutes with coworkers, and the public.

(Tr. 45-46).

9

The VE testified that the hypothetical individual would be able to perform representative jobs in the economy, such as general laborer, laundry laborer, and assembler of small products. (Tr. 46-47).

### III.    STANDARD FOR DISABILITY

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4).  *See also Ealy v. Comm'r of Soc. Sec*., 594 F.3d 504, 512 (6th Cir. 2010);  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d) *and* 416.920(d).   Fourth, if the claimant's impairment or combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) *and*  416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.     Ms. Jones has not engaged in substantial gainful activity since June 8, 2011, the application date (20 C.F.R. § 416.971 et seq.).

2.     Ms. Jones has the following severe impairment: mood disorder (20 C.F.R. § 416.920(c)).

3.     Ms. Jones does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1(20 C.F.R. § 416.920(d), § 416.925 and § 416.926).

4.      After careful consideration of the entire record, I find that Ms. Jones has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can perform only simple, routine, repetitive tasks in a routine and predictable (i.e., with only occasional changes in either the work to be performed or the work setting) environment and that require no more than occasional (i.e., up to one third of the work day), superficial (i.e., limited to serving, speaking, and receiving instructions) interactions with coworkers or the public.

5.     Ms. Jones has no past relevant work (20 C.F.R. § 416.965).

6.     Ms. Jones was born on May 12, 1976 and was 35 years old, considered a "younger person aged 18-49," on June 8, 2011, the date she filed the application for supplemental security income (20 C.F.R. § 416.963).

7.     Ms. Jones has at least a high school education and is able to communicate in English (20 C.F.R. § 416.964).

8.     Transferability of job skills is not an issue because Ms. Jones does not have past relevant work (20 C.F.R. § 416.968).

9.     Considering her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform (20 C.F.R. §416.969 and §416.969(a)).

10.     Ms. Jones has not been under a disability, as defined in the Act, since June 8, 2011, the date she filed the application (20 C.F.R. § 416.920(g)).

(Tr. 56-66).

11

## V.  STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at * 2 (6th Cir. April 1, 2011).  Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.")  This is so because there is a "zone of

12

choice" within which the Commissioner can act, without the fear of court interference.  *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal.  *See, e.g.,White v. Comm'r of Soc. Sec*., 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec*., 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."  *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996); accord *Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  ANALYSIS

**A.     First Assignment of Error: Whether the ALJ failed to properly weigh the opinion of Plaintiff's treating physician**

Plaintiff first argues that the ALJ erred by failing to afford controlling weight to the opinion of her treating psychiatrist Dr. Testa.  The Court agrees.

A treating source opinion must be given "controlling weight" if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record."  *Meece v. Barnhart*, 2006 WL 2271336 at * 4 (6th Cir. Aug. 8, 2006); 20 C.F.R. § 404.1527(c)(2).  However, "a finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (quoting Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 2006 WL 2271336 at * 4 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.)  Indeed, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."  *Blakley*, 581 F.3d at 408.

If the ALJ determines a treating source opinion is not entitled to controlling weight, "the

ALJ must provide 'good reasons' for discounting [the opinion], reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting Soc. Sec. Ruling 96-2p, 1996 SSR LEXIS 9 at * 5).  *See*

14

*also Gayheart*, 710 F.3d at 376.  The purpose of this requirement is two-fold.  First, a sufficiently clear explanation "'let[s] claimants understand the disposition of their cases,' particularly where a claimant knows that his physician has deemed him disabled and therefore 'might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'"  *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).  Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule."  *Wilson*, 378 F.3d at 544.  Because of the significance of this requirement, the Sixth Circuit has held that the failure to articulate "good reasons" for discounting a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record."  *Rogers*, 486 F.3d at 243.

In this case, the ALJ detailed the various limitations described in the three opinions of Dr. Testa--a mental capacity assessment dated May 11, 2015, a letter dated June 8, 2015, and a second mental capacity assessment dated October 26, 2015.  (Tr. 22, 767-770; 1100; 1188-1190).  As noted by the ALJ, Dr. Testa found extreme limitations in a number of areas, including Plaintiff's ability to maintain attention and concentration for extended periods; her ability to complete a normal workweek without interruptions from psychologically based symptoms; her ability to perform at a consistent pace with a standard number and length of rest periods; her ability to interact appropriately with the general public; and her ability to accept instructions and respond appropriately to criticism from supervisors.  (Tr. 1188-1190).  Dr. Testa opined that Plaintiff would likely have three absences in an average month.  (Tr. 1189).

The ALJ provided the following reasons for discounting Dr. Testa's opinions:

15

> I find Dr. Testa's treatment notes do not match/support her conclusions at Exhibits Bl 2F, Bl 7F, and B20F. While the claimant was working on getting clean from PCP, on November 17, 2014, Dr. Testa noted that the anxiety had been okay and she had no recent voices even though she had been off medications for a while (Exhibit B11F:3; November 17, 2014). Even though off medications, she had improved and was described as more engaged (Exhibit Bl 1F:3;November 17, 2014).  Her mood was only "kinda depressed."  Affect was full but restricted (Exhibit B11F:3; November 17, 2014).

(Tr. 22).

This justification falls short of the requisite standard.  The ALJ asserted that Dr. Testa's three opinions--dated May 11, 2015, June 8, 2015, and October 26, 2015--deserved less than controlling weight because they are incompatible with her treatment notes.  To support this conclusion, the ALJ's refers to a single treatment note from November 17, 2014.  While there may be a colorable argument that this specific treatment note is in some ways inconsistent with Dr. Testa's medical opinions, the note represents only a single visit out of many.  The November 17, 2014 treatment note was recorded many months prior to Dr. Testa's opinions, and, between the time of the November 2014 treatment note and the October 2015 opinion, Plaintiff was seen by Dr. Testa at least nine more times.

More importantly, the treatment notes from these later visits provide ample evidentiary support for Dr. Testa's opinions.  For instance, on May 11, 2015, the same day Dr. Testa completed the first mental capacity assessment, Plaintiff had a follow up visit with her doctor.  In the treatment note, Dr. Testa noted symptoms of depressed mood with irritability, an inability to engage and initiate, low motivation, and poor sleep.  (Tr. 1180).  Dr. Testa noted Plaintiff continued to hear voices with depressive content.  (*Id.*).  Dr. Testa again assessed Plaintiff with major depressive disorder with psychotic features (rule out post-traumatic stress disorder).  (*Id.*).  This particular treatment note is highly relevant to the supportability of Dr. Testa's mental

16

capacity assessment, since it was produced *contemporaneously* with it.  Yet, the ALJ failed to acknowledge this note as well as any of the other eight that Dr. Testa produced following the November 17, 2014 visit.

Given the existence of the May 2015 treatment note and the others, all of which provide evidence supportive of Dr. Testa's opinions, it was not reasonable for the ALJ discount Dr. Testa's opinions.  A treatment note from a single doctor's visit that took place many months earlier cannot override the weight and sufficiency of the other eight visits.  It is settled law that "it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick."  *Friend v. Comm'r of Soc. Sec.*, 375 Fed. Appx. 543, 552 (6th Cir. April 28, 2010).  In this case, the ALJ failed to provide "good reasons" for discrediting Dr. Testa's opinions.

The ALJ's reasoning falls short in a second respect.  If it is determined that a treating physician opinion is not entitled to controlling weight, an ALJ must make clear the weight being attributed to the treating source's opinion and the reasons for that weight.  *See Rogers*, 486 F.3d 234, 242 (6th Cir. 2007).  In this case, it is not apparent how much weight the ALJ believed Dr. Testa's opinions merited–whether some, little, none, or something else.  It is only apparent that the ALJ believed that Dr. Testa's opinions were incompatible with treatment notes from a single doctor's visit.  On remand, the ALJ should make this clear.

The Court disagrees with the Commissioner's contention that the failure to properly provide good reasons should be deemed harmless.  The Sixth Circuit has observed that "if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit

17

it, a failure to observe [the "good reasons" requirement] may not warrant reversal.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004).  The *Wilson* court noted two other circumstances where a failure to abide by the treating physician rule should be deemed harmless:

> if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant.  Or perhaps a situation could arise where the Commissioner has met the goal of § 1527(d)(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation.

*Id.*  None of these circumstances exist here.  In this case, the ALJ found that the treatment notes from a single visit failed to support Dr. Testa's opinions, but it is not apparent that the ALJ even considered the additional treatment notes authored by Dr. Testa.  As such, on remand, the ALJ should consider Dr. Testa's opinions in light of all her treatment notes.

In sum, the Court concludes that the ALJ failed to satisfy the treating physician rule.  As such, the Court recommends this matter be remanded.

**B.      Second Assignment of Error: Whether the ALJ erred when he concluded that Plaintiff's impairments did not meet Listing 12.04**

In her second assignment of error, Plaintiff argues that the ALJ erred by concluding that Plaintiff's impairments did not meet Listing 12.04.  In light of the ALJ's failure to properly evaluate Dr. Testa's opinion, which is relevant to the Listing analysis, the Court concludes that on remand, the ALJ must reevaluate whether Plaintiff's impairments meet Listing 12.04.

At the third step in the disability evaluation process, a claimant will be found disabled if her impairment meets or equals one of the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010).  The Listing of Impairments, located at Appendix 1 to Subpart P of the

regulations, describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. §§ 404.1525(a), 416.925(a).  Essentially, a claimant who meets the requirements of a Listed Impairment, as well as the durational requirement, will be deemed conclusively disabled and entitled to benefits.

Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing."  20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3).  It is the claimant's burden to bring forth evidence to establish that his impairments meet or are medically equivalent to a listed impairment.  *See, e.g., Lett v. Colvin*, 2015 WL 853425 at * 15 (N.D. Ohio Feb. 26, 2015).  A claimant must satisfy all of the criteria to "meet" the listing.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009).  "An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  A claimant is also disabled if her impairment is the medical equivalent of a listing, 20 C.F.R. §§ 404.1525(c)(5), 416.925(c)(5), which means it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a).

Where the record raises a "substantial question" as to whether a claimant could qualify as disabled under a listing, an ALJ must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment.  *See Reynolds*, 424 F. App'x  at 414-15.  In order to conduct a meaningful review, the ALJ must make sufficiently clear the reasons for his decision.  *See id.* at 416-17.

19

In order to meet listing 12.04, Plaintiff must satisfy the requirements in paragraph A and paragraph B, or satisfy the requirements in paragraph C.  20 C.F.R. Pt. 404. Subpt. P. App. 1, § 12.04.  In the present case, the ALJ considered whether Plaintiff satisfied the criteria in Paragraph B and Paragraph C.  Finding that she did not meet either, the ALJ concluded that Plaintiff's mental impairment did not meet or equal Listing 12.04.

Paragraph B is satisfied when the claimant exhibits at least two of the following: (1) Marked restriction of activities of daily living; or (2) Marked difficulties in maintaining social functioning; or (3) Marked difficulties in maintaining concentration, persistence, or pace; or (4) Repeated episodes of decompensation, each of extended duration.  20 C.F.R. Pt. 404. Subpt. P. App. 1, § 12.04.

Here, the ALJ accepted the opinion of the state agency physician who found that Plaintiff had a mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation, each of extended duration.  While Plaintiff's treating physician Dr. Testa opined that Plaintiff had extreme and marked limitations in a number areas related to concentration and persistence, social interaction, and adaptation, the ALJ did not mention Dr. Testa's opinion at Step Three.  Rather, based on the opinion of the state agency doctor, the ALJ concluded that Plaintiff did not meet the criteria for Paragraph B.  (Tr. 17-19).

The ALJ's failure to consider Dr. Testa's opinion at Step Three was error.  At Step Three, the ALJ must "consider the medical severity of [the claimant's impairment(s)."  20 C.F.R. § 404.1520.  To do so, the ALJ must evaluate the record evidence, compare it to the listing criteria, reach a reasoned conclusion, and make the reasoning sufficiently clear for meaningful

20

review.  *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011).  In this

case, Dr. Testa's opinion that Plaintiff was markedly to extremely limited with respect to

concentration and persistence, social interaction, and adaptation provides support to Plaintiff's

claim that she meets Listing 12.04.  However, it is not evident that Dr. Testa's opinion was

considered as part of the Step Three analysis.  Further, as explained *supra* Section VI. A, the

ALJ discredited Dr. Testa's opinion without having properly evaluated and weighed it in the

context of Step Four.  As such, the Court is unable to determine whether the ALJ's conclusion at

Step Three was supported by substantial evidence.  Therefore, because a proper evaluation could

change the outcome of the Step Three analysis, on remand, the ALJ should reevaluate Dr.

Testa's opinion and reassess whether Plaintiff meets the relevant listing.

## VII.    CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's

final decision be VACATED and this matter REMANDED for further proceedings.


   */s/ Jonathan D. Greenberg*
Jonathan D. Greenberg
United States Magistrate Judge

Date: April 6, 2017


## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of
Court within fourteen (14) days after the party objecting has been served with a copy of
this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within
the specified time may waive the right to appeal the District Court's order.  *See United
States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g
denied*, 474 U.S. 1111 (1986).**